IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KELLY VANEPPS-SHIRAY, as Guardian of the Person and Estate of ASHLEE SMITH, | DIVISION |
| | 2:23-cv-00047-CB |
| Plaintiff, | Code: |
| vs. | |
| CITY OF HERMITAGE, LOUIS LAUDERBAUGH, CHRISTOPHER MORSE, UNIVERSITY OF PITTSBURGH PHYSICIANS, UPMC HORIZON, UPMC - HORIZON GREENVILLE, MASASHI OKUBO, MCGONIGLE AMBULANCE SERVICE, INC., NOAH AMRHEIN, CARLY FARNELLI, MATT CHLPKA, HEATHER BUSH, and KAYLA KERR, | |
| Defendants. | |

## DEFENDANTS MCGONGILE AMBULANCE SERVICE, INC., ET AL.'S BRIEF IN SUPPORT OF MOTION TO DISMISS

AND NOW, come Defendants, McGonigle Ambulance Service, Inc., Noah Amrhein, Carly Farnelli, Matt Chlpka, Heather Bush, and Kayla Kerr, by and through their counsel, Marian Patchen Cullen, Esquire and Matis Baum O'Connor, P.C., and file the following brief in support of their Motion pursuant to Rule 12(b)(6).

## I. INTRODUCTION

On January 15, 2021, Ashlee Smith, en route to Sharon Regional Hospital for psychiatric evaluation, violently attacked McGonigle Ambulance personnel, seriously injuring several crew members and causing others to fear for their safety. Plaintiff brings this action on behalf of Smith, alleging several federal and state law claims against McGonigle and its crew members. *See* Dkt.No. 3, at 21-22, 29-35. Among other claims, the Amended Complaint alleges discrimination under Title III of the Americans with Disabilities Act and Section 504 of the

1

Rehabilitation Act. It also includes requests for punitive damages as to each of the federal and state law claims. Plaintiff's Amended Complaint must be dismissed for failure to state plausible claims for relief as to these allegations.

First, the Amended Complaint fails to state a plausible claim under Title III of the ADA. Plaintiff has not pled facts sufficient to show standing under Title III as the Amended Complaint alleges no probability of "imminent future" injury. Even if standing were established, Plaintiff's claim must fail, as the Amended Complaint lacks any allegation that the treatment Smith allegedly received was based on her mental disability. Plaintiff's Complaint fails under Section 504 for the same reason it does under Title III. *See Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 282-83 (3d Cir. 2012) ("[T]he substantive standards for determining liability under the Rehabilitation Act and the ADA are the same."). Finally, accepting Plaintiff's allegations as true, the Amended Complaint fails to plausibly establish that Defendants acted with willful disregard for Smith's safety and rights such that punitive damages are warranted.

## II. PLAINTIFF'S ALLEGATIONS

Accepting the allegations as true, Plaintiff's Amended Complaint alleges the following: The Amended Complaint alleges that at 12:41 p.m. on January 15, 2021, two Greenville police officers responded to a call that Ashlee Smith was naked in the street amidst a mental health crisis. (Doc 1 at ¶ 7). Smith was unruly and combative with the officers, who eventually brought her to UPMC Greenville for psychiatric evaluation. *Id.* Plaintiff's Amended Complaint alleges that once at UPMC Greenville, Smith fled the medical staff and was confronted in the parking lot by hospital police. *Id.* at ¶ 8. Smith reacted violently toward the officers and attempted to lunge at them. *Id.* The Amended Complaint alleges that Smith was restrained and the hospital sought to transfer her to Sharon Regional Hospital. *Id.* at ¶ 9.

Plaintiff's Amended Complaint alleges that EMT Amrhein and Paramedic Farinelli—both of McGonigle Ambulance Service—left the hospital with Ashlee Smith at 7:35 p.m. en route to Sharon Regional. *Id.* at ¶ 10. Nearly twenty some minutes into their trip, Officer Lauderbaugh and Officer Morse of Greenville PD were dispatched for assistance. *Id.* at ¶ 14. The officers received a report of a combative patient inside a McGonigle Ambulance. *Id.* Plaintiff's Amended Complaint alleges that after arriving on the scene, the officers witnessed McGonigle Paramedics Chlpka and Kerr struggling to restrain Smith from inside the ambulance. *Id.* EMT Amrhein and Paramedic Farinelli were seriously injured from the violent encounter. *Id.* After nearly twenty minutes of struggling with Smith, Officer Lauderbaugh and Officer Morse were finally able to restrain her. *Id.* at ¶ 16.

Plaintiff's Amended Complaint alleges that during her transport to Sharon Regional, Smith experienced cardiac arrest. *Id.* at ¶ 17. Smith had been moved to the supine position and McGonigle staff performed CPR. *Id.* Plaintiff's Amended Complaint alleges that Smith arrived at Sharon Regional around 8:23 p.m. where she was admitted to the emergency room. *Id.*

### III. LEGAL STANDARD

**A. Motion to Dismiss Standard**

To survive a Rule 12(b)(6) Motion to Dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 662; *see also* Fed. R. Civ. P. 8(a)(2) (a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief"); *Phillips v. Cnty. of Allegheny*, 515 F.3d 224,

232 (3d Cir. 2008) (Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief"). For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *New Jersey Carpenters & the Trs. Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).

In evaluating a 12(b)(6) Motion to Dismiss, the Third Circuit has instructed the district court to undertake the following analysis:

> [W]hen presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts . . . where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief . . . This 'plausibility' determination will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Thus, to survive a motion to dismiss, a plaintiff's complaint must represent a legitimate, justifiable claim rather than an empty narrative of the law. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

**IV. ARGUMENT**

**A. Plaintiff Cannot State a Claim Under Title III of the ADA.**

<u>i. Plaintiff has not pled sufficient facts to establish standing under Title III.</u>

Because the remedy for a private ADA Title III violation is injunctive relief, "past illegal conduct is insufficient to warrant injunctive relief unless it is accompanied by 'continuing, present adverse effects.'" *Doe v. Nat'l Bd. of Med. Exam'rs*, 210 Fed.Appx. 157, 159 (3d Cir.

4

2006) (quoting *City of L.A. v. Lyons*, 461 U.S. 95, 102 (1983)). Thus, to establish standing under the ADA, a plaintiff must sufficiently plead: (1) that the alleged ADA violation is continuing <u>and</u> (2) that he or she will likely return to the place of the alleged violation. *See Anderson v. Kohl's Corp.*, No. 2:12-cv-00822, 2013 WL 1874812, at *4 (W.D. Pa. May 3, 2013); *see also, e.g., Whitaker v. Firman*, No. 2:12-cv-224, 2013 WL 4498979, at *4 (W.D. Pa. Aug. 20, 2013) (to establish standing, the plaintiff must plead that he or she would return "in the imminent future" to the place of the alleged ADA violation "but for the alleged violation of the ADA" . . . "Mere allegations of 'someday' intentions are not sufficient" . . . "A plaintiff must 'put forth a definitive, uncontested intent to return before filing the complaint to establish standing.'" (internal citations omitted)); *Merchant v. Kring*, 50 F. Supp. 2d 433, 434 (W.D. Pa. 1999) (district court held that plaintiff "lacks standing to seek injunctive relief under Title III of the ADA because plaintiff has failed to establish a threat of present or future harm, and plaintiff's claim for injunctive relief is based entirely on past harm").

Here, the Amended Complaint is silent as to any allegations that the discriminatory conduct alleged is continuing at McGonigle and that Smith is likely to return there in the near future. This, in addition to the single, chance encounter being otherwise emergent in nature. The allegations pled of Smith's present condition do not affect this analysis as a policy matter at this stage of the pleadings. As the District of Massachusetts explained in a case where the plaintiff allegedly died as a result of an ADA violation:

> Under the *Lyons* standard, the fact that the defendants' discriminatory malpractice killed Betty Ann seemingly leads to the inevitable conclusion that the Estate cannot show any risk of future harm. Yet application of the *Lyons* standard to this case is unsettling, because it allows the most egregious cases of institutional disability discrimination in violation of the A.D.A. to continue unabated. Nonetheless, because the Supreme Court spoke broadly about the standing requirements for plaintiffs seeking injunctions, logically speaking, those requirements apply to injunctions sought for violations of the A.D.A. Indeed, every court to have considered the standing requirements under Title III of the

5

> A.D.A. has held that in order for a private litigant to prove standing, [he or she] must show a risk of future harm.

*Blake v. Southcoast Health Sys., Inc.*, 145 F. Supp. 2d 126, 133-34 (D. Mass. 2001). *See also Goodwin v. C.N.J., Inc.*, 436 F.3d 44, 49 (1st Cir. 2006) (holding that an executrix could not benefit from an injunction for an asserted ADA violation based on past acts directed towards the now-deceased testator); *Jaraith v. Dyer*, 154 F.3d 1280, 1283 n. 8 (11th Cir. 1998) (holding that plaintiff had no standing because he had no intention of seeking further medical advice or treatment from defendant); *Plumley v. Landmark Chevrolet, Inc.*, 122 F.3d 308, 312 (5th Cir. 1997) (holding that an ADA claim under Title III did not survive plaintiff's death).

Accordingly, Plaintiff has failed to sufficiently allege a present case or controversy so as to confer standing upon her to bring an ADA claim. For this reason, the Complaint should be dismissed against these Defendants pursuant to Rule 12(b)(6).

### ii. Plaintiff has not sufficiently alleged an ADA violation.

Title III of the ADA prohibits discrimination of individuals on the basis of disability in the full use and enjoyment of any place of public accommodation. 42 U.S.C.A. § 12182(a). To state a claim of discrimination under Title III, a plaintiff must allege "(1) discrimination on the basis of a disability, (2) in the full and equal enjoyment of goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation; (3) by the public accommodation's owner, lessor or operator." *Anderson v. Macy's Inc.*, No. 2:12-cv-00556, 2012 WL 3155717, at *4 (W.D. Pa. Aug. 2, 2012); *see also, e.g., Douris v. Dougherty*, 192 F. Supp. 2d 358, 368 (E.D. Pa. 2002); *Bowers v. Nat'l Collegiate Athletic Ass'n*, 118 F. Supp. 2d 494, 514 (D.N.J. 2000); *Sharrow v. Bailey*, 910 F. Supp. 187 (M.D. Pa. 1995).

Here, Plaintiff's Amended Complaint alleges haphazardly that the violent, hostile, resistive, and combative behavior exhibited by Smith was an ineluctable symptom of her mental

6

disability. Thus, Defendants' attempts to otherwise restrain and control her were specifically targeted at her mental disability, not her objectively violent behavior. Put simply, not a single allegation in the Amended Complaint supports the conclusion that Smith's alleged treatment was based inexorably on her mental disability. *See, e.g., Lucarelli v. Ambroise*, No. 1:20-CV-216, 2021 WL 5778487, at *5 (M.D. Pa. May 12, 2021) ("Based on the factual allegations in the Complaint, Defendants called the police because of Plaintiff's conduct, not any disability status he may have."). Stated differently, Plaintiff's allegations make no distinction between the treatment to which Smith was allegedly exposed and that against any other violent or aggressive person engaging in the same behavior. Even if the treatment she allegedly received was based on her mental disability, covered entities under the ADA have no obligation to overlook or accommodate hostile behavior or insubordination. *See Halperin v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 465 (4th Cir. 2012) (applying Title III of the ADA and holding that misconduct or unprofessional behavior, whether related to disability or not, may be the basis for dismissal from a covered program). Accordingly, Plaintiff's ADA claim against these Defendants should be dismissed for this reason as well.

### iii. Plaintiff is not entitled to punitive damages under Title III.

Accepting the allegations as true, Plaintiff cannot establish punitive damages under Title III of the ADA. Title III does not permit a plaintiff to recover monetary damages. Instead, only prospective injunctive relief is available for the sort of public accommodation that Plaintiff alleges. *See Newman v. Piggie Park Enters, Inc.*, 390 U.S. 400, 402 (1968); *see also Anderson v. Macy's Inc.*, 943 F. Supp. 2d 531, 538 (W.D. Pa. 2013) (citing *Reviello v. Phila. Fed. Credit Union*, No. 12-508, 2012 WL 2196320, at *4 (E.D. Pa. June 14, 2012)). Accordingly, courts apply the same prohibition to requests for punitive damages under the same title. *See, e.g., Scott*

*v. Giant Eagle Supermarket*, No. 2:17-cv-00289, 2018 WL 1157993, at *4 (W.D. Pa. March 2, 2018). No amount of pleading on Plaintiff's part can state a punitive damages claim. Thus, this Court should respectfully dismiss Plaintiff's claim pursuant to established case law.

### B. Plaintiff Cannot State a Claim Under Section 504 of the RA.

#### i. Plaintiff has not sufficiently alleged a violation of the RA.

The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]" 29 U.S.C. § 794(a). The same substantive standards apply to claims under the ADA and the RA. *See Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 282-83 (3d Cir. 2012) ("[T]he substantive standards for determining liability under the Rehabilitation Act and the ADA are the same."). Under both statutes, plaintiff must demonstrate "that [she] is a qualified individual with a disability, and that [she] was denied access to a service, program or activity because of [her] disability." *McDonald v. Commw. of Pa., Dep't of Pub. Welfare*, 62 F.3d 92, 95 (3d Cir. 1995).

Here, Plaintiff's claim fails under Section 504 for the same reason it does under Title III. Again, not a single allegation in the Amended Complaint supports the conclusion that Smith's alleged treatment was based inexorably on her mental disability. Stated differently, Plaintiff's allegations make no distinction between the treatment to which Smith was allegedly exposed and that against any other violent or aggressive person engaging in the same behavior. Thus, Smith makes no showing that her alleged treatment was based on her disability. For this reason, Plaintiff's claim under Section 504 should be dismissed.

### ii. Plaintiff is not entitled to punitive damages under Section 504.

Neither can Plaintiff state a punitive damages claim under Section 504 of the Rehabilitation Act. The U.S. Supreme Court held, in *Barnes v. Gorman*, 536 U.S. 181 (2002), that the remedies under Section 504 are coextensive with those under Title VI of the Civil Rights Act of 1964. Because the Court has historically construed Title VI pursuant to contract principles, relief under this title is generally limited to compensatory damages or injunction:

> Title VI invokes Congress's power under the Spending Clause, U.S. Const., Art. I, § 8, cl. 1, to place conditions on *186 the grant of federal funds. See *Davis v. Monroe County Bd. of Ed.*, 526 U.S. 629, 640, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999) (Title IX). We have repeatedly characterized this statute and other Spending Clause legislation as "much in the nature of a contract: in return for federal funds, the [recipients] agree to comply with federally imposed conditions" . . . Although we have been careful not to imply that all contract-law rules apply to Spending Clause legislation, see, *e.g.*, *Bennett v. Kentucky Dept. of Ed.*, 470 U.S. 656, 669, 105 S.Ct. 1544, 84 L.Ed.2d 590 (1985) (Title I), we have regularly applied the contract-law analogy in cases defining the scope of conduct for which funding recipients may be held liable for money damages . . . [P]unitive damages, unlike compensatory damages and injunction, are [] not available for breach of contract.

*Id.* at 185-86. The Third Circuit has affirmed the principle that punitive damages are not available under Section 504. *See, e.g., Doe v. Cnty. of Centre, PA*, 242 F.3d 437, 455-57 (3d Cir. 2001); *Kowalski v. Postmaster Gen. of United States*, 811 Fed.Appx. 733, 735 (3d Cir. 2020). Again, no level of pleading on Plaintiff's part can establish punitive damages under Section 504. Thus, this Court should respectfully dismiss Plaintiff's claim as against established case law.

### C. Plaintiff Has Not Established Punitive Damages as to Her State Law Claims.

Plaintiff's Amended Complaint asserts punitive damages in each remaining claim against these Defendants, but neither law nor the instant facts support this position. Punitive damages may be awarded "when a person's actions are of such an outrageous nature as to demonstrate intentional, willful, wanton, or reckless conduct." *SHV Coal, Inc. v. Cont'l Grain Co.*, 587 A.2d 702, 704 (Pa. 1991). Pennsylvania case law is clear that punitive damages are an "extreme

remedy" available in only the most exceptional matters. *Phillips v. Cricket Lighters*, 883 A.2d 439, 445-46 (Pa. 2005). Punitive damages may be appropriately awarded only when the plaintiff has established that the defendant has acted in an outrageous fashion due to either "the defendant's evil motive or his reckless indifference to the rights of others." *Id.* at 445.

A defendant acts recklessly when "his conduct creates an unreasonable risk of physical harm to another [and] such risk is substantially greater than that which is necessary to make his conduct negligent." *Hutchinson v. Luddy*, 870 A.2d 766, 770 (Pa. 2005). Thus, a showing of mere negligence, or even gross negligence, will not suffice to establish an award of punitive damages. *SHV Coal*, 587 A.2d at 705. Instead, the plaintiff must produce evidence that goes beyond a showing of negligence and show that the defendant's acts amounted to "intentional, willful, wanton or reckless conduct." *Id.* at 704.

Section 505 of the Medical Care Availability and Reduction of Error Act (MCARE Act), which governs suits against healthcare providers, states: "Punitive damages may be awarded for conduct that is the result of the health care provider's willful or wanton conduct or reckless indifference to the rights of others . . . A showing of gross negligence is insufficient to support an award of punitive damages." 40 Pa. Cons. Stat. § 1303.505(a)-(b).

Even accepting the facts as true, the Amended Complaint fails to plead that Defendants acted with willful disregard for Smith's safety and rights. Plaintiff's Amended Complaint alleges that amidst a "violent" and chaotic scene—which lasted nearly twenty minutes and implicated multiple officers and paramedics—Defendants placed Smith in the prone position to be able to transport her to Sharon Regional Hospital. The Amended Complaint alleges further that multiple paramedics were seriously injured by Smith's "violent behavior." And Plaintiff's Amended Complaint admits that hours before this violent encounter, Smith became hostile

toward Greenville Police, acting "combative" and attempting to "take control of one of the officer's tasers." Read in the context of these other allegations of Smith's violent behavior, Plaintiff's claim that Smith was improperly held prone—which indeed forms the central crux of her punitive damages claim—on no reasonable reading supports the notion that Defendants acted willfully or recklessly toward Smith.

Simply, Plaintiff's factual allegations cannot, as a matter of law, support a claim for punitive damages. Although the facts alleged in Plaintiff's Complaint could possibly be construed as setting forth a *prima facie* claim for medical malpractice – which is denied – Plaintiff fails to demonstrate that Defendants actions and/or inactions were "so outrageous as to demonstrate willful, wanton or reckless conduct." *Hutchison*, 870 A.2d at 770. As such, Plaintiff's claims for punitive damages must be dismissed.

### D. McGonigle Ambulance and its Crew are Immune Under the Emergency Medical Services Act.

McGonigle Ambulance is an EMS provider that provides emergency medical services to citizens of Mercer and Lawrence Counties. The Pennsylvania Emergency Medical Services Act states that EMS providers and personnel are immune if they "in good faith attempt to render or facilitate emergency medical care." 35 Pa. C.S.A. § 8151(2). The care at issue in this case falls under emergency medical care as defined by the EMSA. *Id.* Smith was brought to UPMC Greenville following her violent and chaotic encounter with two Greenville police officers. She was diagnosed as a flight risk and acutely psychotic by medical staff, who dispatched McGonigle to transport her to Sharon Regional Hospital.

To overcome the immunity granted by the EMSA, Plaintiff must allege gross negligence. 35 Pa. C.S.A. § 8151(2). Pennsylvania Courts have defined gross negligence as "a form of negligence where the facts support substantially more than ordinary carelessness, inadvertence,

11

laxity, or indifference." *Legion Inden. Ca. v. Carestat Ambulance, Inc.*, 152 F. Supp. 2d 707, 717 (E.D. Pa. 2001)(citing *Albright v. Abington Memorial Hosp.*, 696 A. 2d 1159, 1164 (Pa. 1997)). Plaintiff's allegations of gross negligence fail for the same reasons as do her punitive damages claims. Although the facts alleged in Plaintiff's Complaint could possibly be construed as setting forth a *prima facie* claim for medical malpractice – which is denied – Plaintiff fails to demonstrate that Defendants actions and/or inactions were "so outrageous as to demonstrate willful, wanton or reckless conduct." *Hutchison*, 870 A.2d at 770.

### V. CONCLUSION

For the above reasons, it is respectfully requested that this Motion to Dismiss be granted and that Plaintiff's Amended Complaint be dismissed with prejudice. Plaintiff should not be given an opportunity to amend any deficiencies as any such amendment would be futile.

MATIS BAUM O'CONNOR

By: _____
Marian Patchen Cullen, Esquire
PA I.D. 72880
Attorneys for McGonigle Ambulance Service,
Noah Amrhein, Carly Farnelli, Matt Chlpka,
Heather Bush, and Kayla Kerr, Defendants

912 Fort Duquesne Blvd
Pittsburgh, PA 15222
(412) 338-4750

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that I am this day serving a true and correct copy of the foregoing **Defendants McGonigle Ambulance Service, Inc., et al.'s Brief in Support of Motion to Dismiss** upon all counsel via ECF on this 5th day of April, 2023.

Alec B. Wright, Esquire
O'Brien Coleman & Wright, LLC
116 Boulevard of the Allies
Pittsburgh PA 15222
*Counsel for Plaintiff*

Brendan B. Lupetin, Esquire
Lupetin & Unatin, LLC
Gulf Tower, Suite 3200
707 Grant Street
Pittsburgh, PA 15219
*Co-counsel for Plaintiff*

Charles H. Saul, Esquire
Kyle T. McGee, Esquire
Margolis Edelstein
535 Smithfield St., Suite 1100
Pittsburgh, PA 15222
*Counsel for City of Hermitage, Louis Lauderbaugh and Officer Christopher Morse*

Grant W. Cannon, Esquire
Steven L. Ettinger, Esquire
Dickie, McCamey & Chilcote, P.C.
Two PPG Place, Suite 400
Pittsburgh, PA 15222-5402
*Counsel for University of Pittsburgh Physicians, UPMC Horizon, UPMC Horizon Greenville and Masashi Okubo*

MATIS BAUM O'CONNOR

By: _____
Marian Patchen Cullen, Esquire
PA I.D. 72880
Attorneys for McGonigle Ambulance Service, Noah Amrhein, Carly Farnelli, Matt Chlpka, Heather Bush, and Kayla Kerr, Defendants