IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KELLY VANEPPS-SHIRAY, as Guardian of the Person and Estate of ASHLEE SMITH,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CITY OF HERMITAGE, LOUIS LAUDERBAUGH, CHRISTOPHER MORSE, UNIVERSITY OF PITTSBURGH PHYSICIANS, UPMC HORIZON, UPMC-HORIZON GREENVILLE, MASASHI OKUBO, MCGONIGLE AMBULANCE SERVICE, INC., NOAH AMRHEIN, CARLY FARINELLI, MATT CHLPKA, HEATHER BUSH, and KAYLA KERR,<br><br>　　　　Defendants. | Civil Action No.: 2:23-cv-00047<br><br>(Electronic Filing) |

**BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

DICKIE McCAMEY & CHILCOTE, P.C.

Steven L. Ettinger
PA I.D. # 316266
Email: settinger@dmclaw.com

Grant W. Cannon
PA I.D. #309684
Email:  gcannon@dmclaw.com

Two PPG Place, Suite 400
Pittsburgh, PA  15222-5402
Telephone: (412) 281-7272

Attorneys for Defendants,
University of Pittsburgh Physicians, UPMC Horizon, UPMC-Horizon Greenville and Masashi Okubo

## BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Mentally ill patients, even those who are acutely psychotic, have rights to personal dignity that must always be respected. As a matter of law, restraints should not be used on a mental health patient unless absolutely necessary to effectuate treatment. Through the Mental Health Procedures Act, the Pennsylvania legislature sought to restrict the forcible deprivation of liberty that results from the involuntary commitment of a mental health patient. The MHPA provides careful procedures for commitment in order to ensure that due process of law accompanies any such deprivation. These procedures follow the endorsed policy of Pennsylvania that mental health treatment always be provided in the least restrictive environment necessary under the circumstances. And the use of restraints is perhaps the most restrictive option available to mental health providers. Recognizing the impossible situation for treaters of the mentally ill — tasked with ensuring the least restrictive treatment available while being exposed to liability for any violence of the patient — the Pennsylvania legislature provided expansive immunity to those in this domain. Only in the most extreme situations may a medical provider be liable for a decision regarding the involuntarily-committed patient and their treatment.

Against that backdrop, Dr. Masashi Okubo, University of Pittsburgh Physicians, UPMC Horizon, and UPMC Greenville (the Medical Defendants) cannot be liable in the instant matter. The Medical Defendants are alleged to have been negligent for the failure to order restraints on a mentally-ill patient after petitioning for her involuntary commitment and during her transport to a nearby hospital. But ordinary negligence is insufficient to state a claim covered by the MHPA's grant of immunity. To survive a motion to dismiss, the conduct of the Medical Defendants must have been a gross deviation from the standard of care. The failure to order restraints — a decision in furtherance of the express policy of Pennsylvania — was not so flagrant to overcome MHPA

immunity. Accordingly, the Amended Complaint against the Medical Defendants should be dismissed.

## I.    FACTUAL BACKGROUND

On January 15, 2021, Ashlee Smith was transported by police to UPMC Greenville after she was found sitting naked on a local street. (ECF Doc. 3 at ¶¶ 24, 29). Ms. Smith suffered from schizophrenia and was not taking the medication prescribed to treat her condition. (Id. at ¶ 35). Upon her arrival at the hospital, she was treated by Dr. Masashi Okubo, an emergency medicine physician. (Id. at ¶ 31). Following an attempt to flee the hospital, Dr. Okubo ordered that Ms. Smith be restrained and ordered additional observation on the patient. (Id. at ¶¶ 40-41). He did not order additional medications. (Id. at ¶ 42). He determined that a nearby hospital, Sharon Regional Hospital, was more suitable for inpatient mental health treatment. (Id. at ¶ 46). Accordingly, Dr. Okubo completed a petition for Ms. Smith to be involuntarily committed at that facility. (Id. at ¶¶ 46-53). He requested immediate transportation of the patient for involuntary commitment via ambulance.

Dr. Okubo allegedly instructed that Ms. Smith not be restrained during her transport to Sharon Regional Hospital and did not order sedation. (Id. at ¶¶ 59-62). While the Ambulance Defendants were under no obligation to heed these alleged instructions, they nevertheless agreed with the assessment that Ms. Smith did not require restraints. (Id. at ¶ 63). At some point following departure from UPMC Greenville, Ms. Smith became combative. (Id. at ¶¶ 71, 74). The Ambulance Defendants contacted local police for additional support. (Id. at ¶ 71). One of the dispatched police officers, Officer Lauderbaugh, allegedly entered the ambulance, handcuffed Ms. Smith, and violently restrained her. (Id. at ¶ 75).

Ms. Smith remained forcibly restrained in a prone position. (Id. at ¶ 78). During this time, Ms. Smith was deprived of oxygen while she remained in restraints. (Id. at ¶¶ 79-84). Due to the use of restraints in the prone position, Ms. Smith went into cardiac arrest. (Id. at ¶¶ 92-93). Ms. Smith lost substantial neurological function as a result. (Id. at ¶ 107).

Plaintiff asserts negligence claims against Dr. Okubo as well as vicarious liability and corporate negligence claims against UPP, UPMC Horizon, and UPMC Greenville.

## II.   STANDARD OF REVIEW

A Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a Complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Johnsrud v. Carter, 620 F.2d 29, 33 (3d Cir. 1980). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Connelly v. Lane Constr. Corp., 809 F.3d 780, 786-87 (3d Cir. 2016). "A complaint that pleads facts merely consistent with a defendant's liability stops short of the line between possibility and plausibility of entitlement to relief. The plausibility determination is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

## III.   ARGUMENT

Plaintiff's claims against the Medical Defendants distill to the failure to adequately restrain Ms. Smith during the involuntary commitment process. Such claims are subject to the immunity provision of the Mental Health Procedures Act, which protects healthcare providers participating in any aspect of a mental health patient's care. The Medical Defendants' actions in declining to

3

impose restraints cannot possibly rise to the level of gross negligence necessary to overcome MHPA immunity.  In fact, plaintiff's claims against the Medical Defendants are specifically limited to ordinary negligence.  Therefore, the Medical Defendants are immune from liability under Pennsylvania law.

A.  **The Medical Defendants are entitled to immunity from plaintiff's ordinary negligence claims.**

The Mental Health Procedures Act (MHPA) grants "broad immunity to physicians and others who participate in the involuntary commitment process." Benn v. Universal Health Sys., 371 F.3d 165, 175 (3d Cir. 2004).

> In the absence of willful misconduct or gross negligence, a county administrator, a director of a facility, a physician, a peace officer or any other authorized person who participates in a decision that a person be examined or treated under this act, or that a person be discharged, or placed under partial hospitalization, outpatient care or leave of absence, or that the restraint upon such person be otherwise reduced, or a county administrator or other authorized person who denies an application for voluntary treatment or for involuntary emergency examination and treatment, shall not be civilly or criminally liable for such decision or for any of its consequences.

50 P.S. § 7114(a).  Section 7114 is intended to protect those who treat the mentally ill — "no civil or criminal liability except in a case of willful misconduct or gross negligence." Goryeb v. Commonwealth, Dep't of Pub. Welfare, 575 A.2d 545, 548 (Pa. 1990).  Therefore, anyone who "participates in a decision that a person" be examined or treated as a mental health inpatient is entitled to immunity. 50 P.S. § 7114(a).

Section 7114 of the MHPA was intended to expand access to mental health treatment by protecting the medical providers involved.  "Consistent with this policy to insure adequate treatment to mentally ill individuals in the least restrictive environment, the MHPA provides civil and criminal immunity for decisions regarding the treatment of the patient absent willful

4

misconduct and/or gross negligence." Allen by Allen v. Montgomery Hosp., 696 A.2d 1175, 1178 (Pa. 1997). "Unquestionably, the clear intent of the General Assembly in enacting Section [7114] of the MHPA was to provide limited civil and criminal immunity to those individuals and institutions charged with providing treatment to the mentally ill." Farago v. Sacred Heart Gen. Hosp., 562 A.2d 300, 303 (Pa. 1989). As such, by protecting medical professionals, the MHPA fosters safe and adequate treatment to the mentally ill.

    **1.**    **The Medical Defendants are entitled to the MHPA's grant of immunity.**

The MHPA immunity provision applies to all medical providers and other individuals involved in any stage of the involuntary commitment process. The MHPA provides careful involuntary commitment procedures, which are intended to protect the due process rights of mentally ill individuals. See Doby v. DeCrescenzo, 171 F.3d 858, 872 (3d Cir. 1999) ("Given the brief detention authorized, the warrant procedures provide important safeguards to protect individuals' rights."). As delineated by the statute, an "emergency examination may be undertaken at a treatment facility upon the certification of a physician stating the need for such examination" or upon a warrant issued by the county administrator or upon a written application by a physician who has observed the patient. 50 P.S. § 7302(a).

In this matter, Dr. Okubo is alleged to have "completed a petition for [Ms. Smith's] involuntary mental health commitment." (ECF Doc. 3 at ¶ 46). As a result, Dr. Okubo formally initiated the involuntary commitment process pursuant to the procedures set forth in the MHPA. (Id. at ¶¶ 47-48). By completing commitment forms and initiating the process, Dr. Okubo "participated in a decision" that Ms. Smith be treated under the MHPA. 50 P.S. § 7114(a). He is therefore entitled to immunity under the statute. See, e.g., Doby, 171 F.3d at 873 (applying MHPA immunity to the petitioner for involuntary commitment as a participant in the process); Martin v. Holy Spirit Hosp., 154 A.3d 359 (Pa. Super. 2017) (applying MHPA immunity because the mental

health patient seeking voluntary inpatient treatment had been interviewed by trained nursing staff); Hancock v. Friends Hosp., 2015 Pa. Super. Unpub. LEXIS 410 (Mar. 9, 2015) (applying MHPA immunity to hospital whose personnel declined to admit a mental health patient for voluntary inpatient treatment pursuant to the MHPA).

Because Section 7114 of the MHPA applies to Dr. Okubo and the Medical Defendants, neither may be civilly liable unless plaintiff can show that they acted with willful misconduct or gross negligence.

    **2.    Plaintiff's Amended Complaint fails to allege gross negligence on the part of the Medical Defendants.**

The allegations in plaintiff's Amended Complaint against the Medical Defendants assert claims of ordinary negligence — while claims against the other co-defendants are phrased in terms of gross negligence. As a result, plaintiff's claims against the Medical Defendants fail as a matter of law.

Yet the flaw within plaintiff's Amended Complaint is not an omission of a single word. Even if the Amended Complaint had asserted "gross" negligence, the allegations would still fall short as a matter of law. Plaintiff's claims against the Medical Defendants are nothing more than the alleged instruction not to use restraints on the patient during her transport to another medical facility. (ECF Doc. 3 at ¶¶ 1, 60, 149-161). Accordingly, the case against the Medical Defendants is simply an alleged failure to order more intrusive treatment options. Such allegations, in the light most favorable to plaintiff at this preliminary stage, are insufficient to overcome MHPA immunity.

The failure to implement adequate supervision protocols does not rise to the level of gross negligence. As set forth by the Pennsylvania Superior Court in Downey v. Crozer-Chester Medical Center, 817 A.2d 517 (Pa. Super. 2003), gross negligence cannot be substantiated on mere allegations of inadequate monitoring protocols. In Downey, the plaintiff sued a hospital, alleging

6

that a mentally-ill patient drowned as a result of the hospital's failure to directly supervise the patient while she was bathing.  The Superior Court affirmed dismissal of the claims because the alleged failure to supervise the decedent constituted, at most, ordinary negligence. Id. at 526.  The Court found no indication of gross negligence: "At most, their failure to supervise Downey for the entire period of bathing constituted ordinary carelessness, inadvertence, laxity or indifference which fails to give rise to a cause of action under the MHPA." Id. at 527.

Similarly, in Farago v. Sacred Heart General Hospital, 562 A.2d 300 (Pa. 1989), the plaintiff was a voluntary inpatient within the psychiatric unit at the defendant-hospital.  The on-call psychiatrist determined that plaintiff required routine orders rather than heightened or special observation protocols.  After she was sexually assaulted by a male patient in the psychiatric unit bathroom, plaintiff initiated suit against the hospital alleging, *inter alia*, negligence for failing to adequately supervise her while on the unit.  On review, the Pennsylvania Supreme Court determined that decisions regarding a patient's level of supervision constitute treatment under the MHPA.  And a decision to impose more relaxed supervision is consistent with the goals of the statute to impose the least restrictive means of treatment. Farago, 562 A.2d at 304.  Accordingly, the Court held that plaintiff failed to show that the supervision decision constituted gross negligence which would abrogate the immunity protections of the statute. Id.

Finally, in Miller v. Geisinger Medical Center, 78 Pa. D. & C.4th 467 (C.C.P. Montour County 2006), a psychiatric inpatient being treated for major depression died at the defendant-hospital allegedly as a result of a medication error.  Orders were placed for the patient's vital signs to be assessed during each shift change.  The patient's vital signs were checked at midnight and at 6:00 a.m.  At 6:00 a.m., a nurse examined the patient and received permission to withhold the patient's medication due to concern over his somnolent state.  At 6:55 a.m., the patient was found

7

in cardiopulmonary arrest and died shortly thereafter.  Plaintiff alleged that, *inter alia*, the defendants were grossly negligent for failing to more closely monitor the patient.  The court held that a physician's alleged failure to instruct a nurse to remain with the patient and to monitor his condition does not amount to gross negligence. Miller, 78 Pa. D. & C.4th at 481.  The court reasoned: "Even if these allegations, under the circumstances, amounted to ordinary negligence, Doctor Hoffer's alleged actions were not flagrant and do not amount to a form of negligence substantially more than ordinary carelessness, inadvertence, laxity, or indifference. These actions do not amount to gross negligence." Id.  The court also held that another nurse's alleged failure to more closely monitor the patient overnight did not constitute gross negligence. Id. at 480.

Plaintiff's Amended Complaint does not plead gross negligence as to the Medical Defendants, and the allegations therein do not amount to gross negligence.  Plaintiff's claims against the Medical Defendants are nothing more than an alleged failure to order heightened supervisory restrictions.  But, as clarified by Pennsylvania courts, the failure to more closely monitor or supervise a patient covered by the MHPA constitutes (at most) ordinary negligence.  Accepting plaintiff's allegations as true, no reasonable jury could find that Dr. Okubo acted with gross negligence or willful misconduct.  He properly initiated the involuntary commitment process and ordered the patient's transfer to a more appropriate facility.  His behavior cannot meet the legal definition of gross negligence.  Accordingly, plaintiff's allegations fail to overcome the immunity provision of the MHPA.

Notably, while Pennsylvania courts have thoroughly considered failure to monitor claims, it appears that no Pennsylvania providers have been sued by a MHPA patient for the *failure* to be placed in restraints.  Such a claim strikes at the heart of the entire MHPA framework.  The immunity provision of the MHPA is to be applied broadly because a narrow application "could

8

lead such providers of medical care to minimize their risks by placing the mentally ill patients in a more restrictive environment than is necessary." Allen by Allen v. Montgomery Hosp., 696 A.2d 1175, 1179 (Pa. 1997).  Such a result would contravene the policy of the MHPA which requires mental health providers to employ "the least restrictions consistent with adequate treatment." 50 P.S. § 7102; see also In re Victor, 665 A.2d 8, 11 (Pa. Super. 1995) ("[T]he MHPA clearly expresses the policy that persons in need of treatment should be subjected to as few restrictions on their liberty as possible."); Virgin v. Hopewell Ctr., 66 S.W.3d 21, 27 (Mo. Ct. App. 2001) (noting that, without immunity, "treating physicians would indulge every presumption in favor of further restraint, out of fear of being sued," which would not be in the public interest).

The Medical Defendants could not have been grossly negligent because the MHPA specifically directs medical providers to refrain from imposing restraints whenever possible. See 50 P.S. § 7102.  This statutory directive is intended for the protection of patients such as Ms. Smith. While plaintiff may disagree as to the appropriateness of the decision to not order restraints, plaintiff cannot contest that the MHPA protects the Medical Defendants from liability for that decision.

**B.     Plaintiff's Amended Complaint fails to allege facts to state a claim for intentional infliction of emotional distress.**

In Count XII of the Amended Complaint, plaintiff asserts a claim for intentional infliction of emotional distress collectively against all of the defendants.  The allegations set forth in the Amended Complaint, however, fail to support this cause of action.

Under Pennsylvania law, to prevail on a claim of intentional infliction of emotional distress (IIED), a plaintiff must sufficiently plead and ultimately prove that the defendant, by extreme and outrageous conduct, intentionally or recklessly caused severe emotional distress. Brezenski v. World Truck Transfer, Inc., 755 A.2d 36, 45 (Pa. Super. 2000).  The conduct at issue "must be so

9

outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in any civilized society." Toney v. Chester Cty. Hosp., 961 A.2d 192, 202 (Pa. Super. 2008).  It is not "enough that the defendant has acted with intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort." Id.  "With regard to the element of outrageousness, it is for the court to determine in the first instance whether the defendant's conduct may reasonably be regarded as so extreme and outrageous to permit recovery." Swisher v. Pitz, 868 A.2d 1228, 1231 (Pa. Super. 2005).

   Plaintiff has failed to allege any facts which could sustain an IIED claim against the Medical Defendants.  Plaintiff has not pleaded any outrageous conduct by Ms. Smith's medical providers.  She has simply alleged a treatment dispute, which cannot rise to the level of outrageousness necessary to sustain her claim.  Moreover, while plaintiff's allegations may be enough to support an ordinary (but not gross) negligence claim, they do not sufficiently allege that any of the defendants acted with the desire and certainty to sustain an IIED claim.  Accordingly, plaintiff's claim for intentional infliction of emotional distress must also be dismissed.

## IV.   CONCLUSION

Plaintiff has failed to state a viable claim against the Medical Defendants because plaintiff's claims do not overcome the immunity afforded by the MHPA.  Accordingly, these defendants requests that plaintiff's Amended Complaint as to Masashi Okubo, M.D., University of Pittsburgh Physicians, UPMC Horizon, and UPMC Greenville be dismissed with prejudice.

                DICKIE McCAMEY & CHILCOTE, P.C.

                By  */s/ Steven L. Ettinger*
                      Steven L. Ettinger
                      PA I.D. # 316266
                      Email: settinger@dmclaw.com

                      Grant W. Cannon
                      PA I.D. #309684
                      Email:  gcannon@dmclaw.com

Two PPG Place, Suite 400
Pittsburgh, PA  15222-5402
Telephone: (412) 281-7272

Attorneys for Defendants,
University of Pittsburgh Physicians, UPMC Horizon, UPMC-Horizon Greenville and Masashi Okubo

Civil Action No.: 2:23-cv-00047-CB

## CERTIFICATE OF SERVICE

I, Steven L. Ettinger, Esquire, hereby certify that a true and correct copy of the within Brief in Support of Motion to Dismiss Plaintiff's Amended Complaint has been served this 10th day of April, 2023, by electronic service via the Court's CM/ECF system upon all counsel of record.

DICKIE, MCCAMEY & CHILCOTE, P.C.

By  /s/ Steven L. Ettinger
    Steven L. Ettinger
    PA I.D. # 316266
    Email: settinger@dmclaw.com

Attorneys for Defendants,
University of Pittsburgh Physicians, UPMC Horizon, UPMC Horizon Greenville and Masashi Okubo