IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KELLY VANEPPS-SHIRAY, as Guardian of the Person and Estate of ASHLEE SMITH,<br><br>    Plaintiff,<br>  v.<br><br>CITY OF HERMITAGE, *et al.*,<br><br>    Defendants. | Civil Action No. 23-47<br><br>Judge Cathy Bissoon |

**MEMORANDUM AND ORDER**

**I.  MEMORANDUM**

Defendants' Motions to Dismiss (Docs. 36 & 40) will be granted in part and denied in part, as follows.

The McGonigle Defendants have not demonstrated entitlement to dismissal of Plaintiff's claim pursuant to Section 504 of the Rehabilitation Act ("RA"), 29 U.S.C. § 794, (Count V). Under the RA, a plaintiff must demonstrate "that [she] is a qualified individual with a disability, and that [she] was denied access to a service, program or activity because of [her] disability." McDonald v. Commw. of Pa., Dep't of Pub. Welfare, 62 F.3d 92, 95 (3d Cir. 1995).  In the Amended Complaint, Plaintiff argues that the McGonigle Defendants impermissibly restrained Ashlee Smith in the prone position because of her disability given that the EMS personnel knew she was previously violent and posed a severe flight risk due to her acute psychosis.  Amend. Compl. (Doc. 43) at ¶¶ 53-109, 132-39.  Although McGonigle argues that other violent or aggressive patients are not alleged to have been treated differently, *see* McGonigle Open Br. (Doc. 41) at p. 8, such an inference reasonably may be drawn from the pleadings.

Both the McGonigle and UPMC defendants seek dismissal of their negligence claims (Counts X and XI and Counts VII through IX, respectively) on the basis of qualified immunity. However, as Plaintiff highlights, these issues cannot be resolved under Rule 12(b), as pivotal issues of fact remain. Indeed, all of the cases cited by UPMC on gross negligence were resolved on summary judgment or trial. *See* UPMC Opening Br. (Doc. 41) at pp. 6-8. Moreover, the Court finds it plausible that the McGonigle and UPMC Defendants could have grossly deviated from the standard of care. While UPMC questions how they can be "'grossly negligent' for complying with legislative directives to refrain from using restraints, UPMC Reply (Doc. 44) at pp. 1-2 (citing 55 Pa. Code §§ 5100.54, sec. 6(c) and 5100.15(b)), or warns against "incentiviz[ing]" providers "to impose restraints even when unwarranted," *id*. at p. 2, Plaintiff is correct to highlight that Defendants were aware restraints may be warranted in certain circumstances. Indeed, the legislation cited to by UPMC envisions such limited scenarios.[1] Importantly, in this case, restraints had been ordered for Smith on two occasions while she remained stationary in a hospital bed. *See* Amend. Compl. ¶¶ 37, 40. The EMT notes also indicate that Defendants raised concerns about using restraints for Smith's safety, but declined to do so based on Smith's "pinky promise":

> Pt requires transport for psychiatric evaluation at SRH ER . . . Crew at pt side. Operations: Safety restraints, Patient loaded – Cold. Crew receives a verbal report from the nurse as well as paperwork. Crew requests either soft restraints or medication prior to transport for pt safety due to pt being combative and a flight

---

[1] *See, e.g.*, 55 Pa. Code § 5100.54, sec. 6(c) ("No patient shall be subject to chemical, physical, or psychological restraints . . . *other than in accordance to the Department's regulations applicable to State Mental Health Facilities* or . . . *the policy and procedures for seclusion and restraint approved by its medical staff and governing body*." (emphasis added)); § 5100.15(b) ("The treatment plan shall indicate what less restrictive alternatives were considered and why they were not utilized. *If the plan provides for restraints*, the basis for the necessity for such restraints must be stated in the plan under Chapter 13." (emphasis added)).

> risk.  Pt's nurse and doctor declines, stating 'pt pinky promised' that she would be calm and cooperative.

*Id*. at ¶ 66.  These facts, coupled with the allegation that putting individuals who are suffering from acute psychosis in the prone position violated Pennsylvania law, protocols, or regulations, *see id*. at ¶¶ 88-91, also suggest to the Court that the McGonigle Defendants knew or should have known that Smith should not have been later restrained in the prone position on the way to Sharon Regional Hospital.  Taking the facts alleged as true, the Court finds plausible that Defendants could have grossly deviated from the standard of care.  Accordingly, Defendants' Motions will be denied.

Finally, as to McGonigle's request for dismissal of Count VI under the Americans with Disabilities Act ("ADA"), and the claim for punitive damages under the RA in Count V of the Amended Complaint, Plaintiff stipulates to McGonigle's requests, and the Motion is granted as to those claims.  Plaintiff also stipulates to the dismissal of Count XII for intentional infliction of emotion distress as to the UPMC defendants only.  UPMC's Motion is granted to that extent.

## II.  ORDER

For these reasons, Defendants' Motions to Dismiss (**Docs. 36 & 40**) are **GRANTED** in part and **DENIED** in part.  Plaintiff's punitive damages claim under the Rehabilitation Act (Count V) will be **DISMISSED WITH PREJUDICE**.  Plaintiff's ADA claim (Count VI) also will be **DISMISSED WITH PREJUDICE** in its entirety.  Plaintiff's intentional infliction of emotional distress claim (Count XII) as it relates to the UPMC defendants only, will be **DISMISSED WITH PREJUDICE**.  The remaining claims may proceed as pleaded.  Defendants' respective answers are due on or before **January 16, 2024**.

IT IS SO ORDERED.

December 21, 2023                                    s/Cathy Bissoon
                                                     Cathy Bissoon
                                                     United States District Judge

cc (via ECF email notification):
All Counsel of Record